**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRUCE EKLUND, an individual,
  *Plaintiff-counter-claim-defendant-*
                      *Appellant,*

v.

CITY OF SEATTLE MUNICIPAL COURT,
a municipal corporation,
  *Defendant-counter-claimant-*
              *plaintiff-Appellee,*

FRED BONNER; JANE DOE BONNER;
GAYLE TAJIMA; JOHN DOE TAJIMA,
and their marital community;
YOLANDE WILLIAMS; JOHN DOE
WILLIAMS, and their marital
community; MARK PARCHER; JANE
DOE PARCHER, and their marital
community,
          *Defendants-Appellees.*

No. 09-35652
D.C. No.
2:06-cv-01815-TSZ

BRUCE EKLUND, an individual,
  *Plaintiff-counter-claim-defendant-*
                      *Appellee,*

v.

FRED BONNER,
              *Defendant-Appellant,*

CITY OF SEATTLE MUNICIPAL COURT,
a municipal corporation,
  *Defendant-counter-claimant-*
              *plaintiff-Appellant.*

No. 09-35676
D.C. No.
2:06-cv-01815-TSZ

OPINION

18745

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, Senior District Judge, Presiding

Argued and Submitted
August 6, 2010—Seattle, Washington

Filed November 24, 2010

Before: William C. Canby, Jr., John T. Noonan and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Noonan;
Concurrence by Judge Canby

## COUNSEL

Charles C. Stockmeyer, Seattle, Washington, for plaintiff-counter-claim-defendant-appellant-appellee Bruce Eklund.

Amy B. Lowen, Seattle, Washington, for defendants-counter-claimant-plaintiffs-appellees-appellants    Seattle    Municipal Court, et al.

## OPINION

NOONAN, Circuit Judge:

Bruce E. Eklund (Eklund) brought this suit under 42 U.S.C. § 1983 against the City of Seattle Municipal Court (the Municipal Court), the chief judge of the court, Fred Bonner (Bonner), and others. Eklund alleged wrongful termination of

his employment by the Municipal Court and denial of due process of law in his termination. A jury returned a verdict for the defendants on the wrongful termination claim and for Eklund on the due process claim. Bonner and Eklund each appeal.

Holding that Bonner was entitled to qualified immunity, we reverse the judgment of the district court and remand for entry of judgment in favor of Bonner.

Other issues of Washington law involving the other defendants are addressed in a memorandum disposition filed contemporaneously with this opinion.

## FACTS

Eklund attended Central Washington University. At age 19, he began working for the state legislature. In 2001, at the age of 23, he was hired as an administrative staff assistant in the Municipal Court at an annual salary of about $13,000. He was eventually promoted to the position of Strategic Advisor at a salary of $49,000. At all times of his service for the Municipal Court he was an at-will employee.

What led to his discharge and this lawsuit is set out in correspondence between him and Judge Bonner.

On July 7, 2004, Judge Bonner wrote Eklund:

> I have reviewed the investigative report pertaining to how you handled monetary obligations you owed the court. Through exhaustive fact finding, it was determined that you benefitted financially from improper adjustments to your court record and participated in a plan to continue your monetary obligations and avoid penalties.
>
> On multiple occasions, your co-worker, who is also a friend, revised your court record and interfered

with the defaulting and collections referral of your tickets. Your MCIS obligation due dates were extended twelve times on six citations, four of your citations were recalled from collections (one month, six months, nine months and 28 months after collection referral), and nine default penalties totaling $210.00 were removed. In all, your friend took action on ten citations belonging to you.

During your fact finding you acknowledged asking your friend for assistance with your outstanding court matters. You explained that you had multiple discussions with your friend regarding your citations, and that on at least one occasion — your first meeting — you met your friend off site over coffee to make arrangements. You said you were too embarrassed to present yourself as a customer at the court's compliance service counter.

Your tickets were managed/tracked carefully so that they could be updated before the expiration of obligation due dates. You said you could not explain how they were monitored. You did not consult a supervisor for assistance or advice on how to appropriately resolve your outstanding monetary obligations nor did you request magistrate hearings to adjudicate your tickets. Instead, you made personal arrangements with your friend for the resolution of your court matters.

You denied any wrongdoing, and said you believed your friend was handling your tickets in the same manner that he would work any citizen's court matters. You told management that you asked your friend to set you up on a time payment plan and thought he had done so. Yet, you acknowledge that you made no down payment, were not given a payment schedule and made no installment payments.

You said you did not know that your friend was removing your default penalties, but you did notice that the total balance was smaller than you expected. You also explained that you did not know your tickets were in collections nor did you know that your friend recalled your tickets from collections.

You told management that you are not familiar with how citations "work" in MCIS, and therefore you did not know what to expect in terms of your citations defaulting and being sent to collections. You suggested that your lack of familiarity with the system explains why you were unaware of the actions being taken on your behalf.

Although you acknowledged receipt of the SMC Employee Handbook, which contains policies prohibiting your conduct, and signed a statement that you understood you were expected to adhere to the policies, you said you were unaware at the time that your actions violated any court or City policies.

You said you now recognize that you acted irresponsibly in your duty to resolve your tickets in a timely manner. You offered to repay the court the penalties that were removed and stated your desire to resolve this matter in the best possible way. You explained that in retrospect you could understand why management is concerned about the appearance of this situation.

I have found your explanation for your conduct to be inadequate, and frankly, the lack of knowledge inferred in your responses to the fact-finding questions is suspect.

I have concluded from the information contained in this investigation that you (1) collaborated with your

friend and co-worker on an improper arrangement that benefited you financially and attempted to cover up this fact and (2) had knowledge that some, if not all, of the actions taken were improper.

Your actions constitute serious misconduct. You violated the SMC Code of Conduct, City of Seattle Code of Ethics, SMC Failure to Appear or Failure to Pay Policy, SMC Violations of Seattle Municipal Court Policy, SMC Information Access Policy, and SMC Workplace Expectations for Employees. Furthermore, you collaborated with a person whose actions may be considered a violation of RCW 40.16.010, which criminalizes the alteration or removal of a public document.

This misconduct is of such severity that, absent mitigating circumstances, substantial discipline in the form of discharge could be warranted. The violations are serious enough that the court could decide to refer this case to the Seattle Police Department for criminal investigation and potential prosecution.

As such, I am considering termination of your employment from the court. Effectively immediately, you are being placed on paid Administrative Leave pending resolution of this matter. You may not be in the workplace during your Administrative Leave. If you need to communicate with the court for any purpose, you are to contact the court's Senior Human Resources Representative, Janice Flaagan, at 206-684-5662.

I am granting you the opportunity to respond to me regarding the proposed disciplinary action, in writing or in person. You may have a representative of your choosing with you at our meeting, should you decide to respond in person.

Please indicate to me no later than 4:00 p.m. on Friday, July 9, 2004 if you desire to respond in writing or in person, by contacting Ms. Flaagan at 206-684-5662.

If you wish to meet with me in person, a meeting will be scheduled for you the week of July 12, 2004.

cc:   Yolande E. Williams, Court Administrator
      Gayle Tajima, Director of Finance & Administrative Services
      Mark Parcher, Director of Court Operations
      Janice Flaagan, Human Resources

Eklund chose to meet with Bonner in person.

On July 12, 2004, Eklund faxed Bonner a letter from Eklund's counsel, Paul G. Eklund:

Dear Judge Bonner

Perhaps a brief introduction is appropriate. You have arranged an administrative employment hearing for Bruce Eklund at 10am on Wednesday, July 14, 2004 (Loudermill type hearing). This hearing is pursuant to a July 7, 2004 disciplinary letter signed by you and addressed to Bruce. As a court employee, Mr. Eklund has a right to the presence of a 'special representative' at this hearing.

Bruce requested that attorney Phil Talmadge appear with him as his special representative. However, Mr. Talmadge has a deposition already scheduled for that date and time. I have practiced with Phil in an 'of counsel' relationship since his departure from the Supreme Court. I am available to attend on July 14. It appears that you are in two conflicting roles: in one sense bringing allegations for Bruce to

defend and then simultaneously acting as an impartial hearing officer. This presents a clear due process issue.

On behalf of Bruce, I request a brief continuance of the July 14 hearing, and also the appointment of an impartial hearing officer. Phil is scheduled to have surgery later in July. However, I can appear with Bruce during the week of July 19. Presently I am in Eastern Washington, and if our requests are denied then I will need to arrange to drive to Seattle tomorrow. My telephone number (with voice mail) is 509-996-3498. You may also leave a message at my law office (206 575-1482). Phil and I share the same fax number (206 575-1397).

We will forward a brief written Memorandum and a few exhibits outlining Bruce's response to the July 7, 2004 letter from Judge Bonner. I will arrange to have this letter sent via facsimile on July 12 and the materials delivered to Judge Bonner's office by July 13. Thank you for your consideration. Please call me no later than 10am on Tuesday, July 13, to let me know if I should be present for the hearing as scheduled (July 14 at 10 am). The best way to contact me today or tomorrow is via telephone at (509) 996-3498.

> Sincerely,
> Paul G. Eklund

Enclosure: Memorandum of Employee Bruce Eklund (via messenger or fax)

cc:  Mr. Phil Talmadge, Esq.
      Mr. Bruce E. Eklund

Faxed together with this letter from Eklund's counsel was the following letter to Bonner from Eklund himself:

Dear Judge Bonner:

Thank you for arranging today's hearing. I have prepared this outline to summarize the primary issues related to accusations brought by Mark Parcher through a July 7, 2004 letter signed by you. It is my understanding that you wish to conduct a hearing to evaluate the allegations and investigation of Mr. Parcher (as outlined in your letter to me), as well as to consider any mitigating circumstances.

### Response to Allegations

It is my understanding that in March 2004, SMC conducted an investigation regarding failure to pay citation (FTP) by certain employees of the City of Seattle. Though I had paid all outstanding parking citations, Mr. Parcher forwarded a report to you indicating that I had violated unspecified provisions of the SMC Handbook. On April 22, 2004 I was initially confronted with data indicating that I had arranged special treatment for payment of my tickets. At that time I was presented with Exhibit A. Later, I was presented with information which is (inaccurately) summarized in Exhibit B (undated 'Investigation Summary of Steven Mack and Bruce Eklund').

Before responding to several specifics in Exhibit A, I will provide your honor with the same history that I provided to Mr. Parcher and others assisting in the investigation. I received six parking citations. The vehicle address was at my mother's house (for she co-signed the loan). In March 2003, my mother contacted me and gave me several citation notices that came to her house. I informally mentioned this to Steven Mack. However, I made all arrangements

for payment of my citations by coming to the court window (#10) and requesting to make payments.

For six citations, I owed $200 (five at $35 and one at $25). I paid a total of $348 (*see attached proof of payments*). The July 7 letter from Hon. Fred Bonner states that I should pay an additional $210, for a total of $458 (on base fines of $200). I am willing to do this if the court so requests. For reasons I will explain orally (and summarize herein), I do not believe that losing my job is appropriate. When I became aware of the citations, I went to the court window and made arrangements to pay them. I never asked for special privileges and made payments, paying off all tickets and penalties (of which I was aware).

Specific Response to Investigation

Several of the conclusions of the investigation are faulty, or based on inaccurate data. Following are a few examples. The left column is inaccurate data presented to me, and the right column is an accurate version.

| *Information Presented at Investigation* | *Verified Documentary Evidence* |
|---|---|
| 1.  Citation 25219011 was paid on 6/27/03 | Receipt number 14414164 proves that I paid Citation 2521901 on 5/16/03 |
| See Exhibit C | See Exhibit D |

Relevance: The receipt which I saved clearly shows that the chronology (and conclusions) in the investigation are not accurate. I had no discussions

with Mack about whether or not he waived defaults. However, the investigation alleges he 'pulled' the ticket from collections on 5/19/03, and omits any record of payment on 5/16/03 (as proved by the receipt). The receipt I saved for 25219011 shows that investigation is flawed as to this citation.

| 2. | Citation 23224263 was improperly extended on 1/31/04;(and a $25 penalty 'erased' in the court records) | My wife had an emergency Cesarian Section delivery of our second child on 1/29/04. (I was at the hospital on 1/31/04, a Saturday). |
|----|----|----|

Relevance: I had no knowledge of this alleged transaction. I was on parental leave at the time (and at the hospital) and it seems very unlikely that anyone tinkered with the court computer on Saturday, January 31, 2004. Even during pressing financial and family circumstances I paid my tickets and known penalties as fast as I could. Citation 23224263, as presented during the investigation, is no evidence of wrong-doing on my part.

3. Steven Mack testimony (portrayed as collusive in Exhibit B)
   (Also: July 7 letter alleges 10 citations)

   Several times Mr. Mack clearly states that I did not request special treatment and that I went through proper channels at the court payment window. I never asked that Steve bend the rules for me, and if he did, I was unaware.

Relevance: I have been threatened with termination of my job. I paid $348 to the court for $200 in

citations. I was unaware of improprieties (if any) by Steven Mack. The investigation alleges 10 citations (see July 7 letter by Judge Bonner). When I was interviewed in April, I was questioned about 6 citations. There were only six parking citations, and I have paid $348 for the original amount of $200. I believed I paid all fines and penalties.

4.   Other (I am prepared orally to discuss additional inaccuracies at the July 12 hearing).

### Procedural Issues (Investigation)

I was interviewed two times (April 22 and June 8). When confronted with the above inaccuracies, I requested to provide information, including copies of documents that would clarify the discrepancies. Mr. Parcher told me he did not need to see my evidence. Mr. Parcher asked pointed, leading questions such as: "did you arrange an off-site meeting to fix your tickets with Steve (Mack)". I would respond: "No, Steve and I have coffee sometimes, but I went to his window to make the arrangements". Mr. Parcher would then twist my comment and conclude: "So you did try to make special arrangements". The interview followed this tone. It was clear that the purpose of Mr. Parcher's investigation was not to seek information, but to build a case against me.

I am aware of the findings of the department's investigation of several employees for suspected FTP of citations. In several cases, there are clear instances of failure to pay citations, yet no threat of discipline. In my case, I paid all my fines, including $148 in penalties. Because of financial pressure in my family, I requested an extension. I paid all my fines. It seems very inconsistent that I would be singled out and threatened with termination when other

employees have neglected their obligations, but face no discipline.

Retaliation Issues

In October 2003, I was asked by my supervisor, Gayle Tajima, to research certain issues relating to court revenues and funding, particularly dealing with magistrate fine reductions of parking tickets and traffic infractions. This has been an ongoing part of my work assignment since asked to work with the Department of Finance on revenue and infraction related issues stemming from questions DOF had regarding revenue shortfalls from parking tickets in 2003, despite an increase in citations filed. I completed the research over several weeks or months, and provided my printed findings and spread sheets to Ms. Tajima and Mr. Parcher. For several months, culminating in March 2004, there was much discussion over the reports I had produced. Mr. Parcher, Ms. Tajima, and I met to review the research I had produced. Parcher tore up my work in front of me and demanded that I not make a public record of my findings, that I not send my findings or related information via e-mail as to not create a public record, and that I not discuss the information contained in my reports with anyone outside of the Executive Leadership Team, the Court Administrator, or the Presiding Judge. They both instructed me to tell no one about my findings, to destroy hard copies of my reports, and stated that they did not want the City Council or Executive's offices or staff to find out about magistrate fine reduction practices. Mr. Parcher specifically stated that "We (the court) have already enough trouble with the magistrates, we don't need it getting out that you (the public) can request a hearing and have your ticket reduced below $5."

I also have been working with Gayle Tajima and Barb Gangwer of the City of Seattle Financial Department on calculating court revenues and improving the budget projection process. Ms. Gangwer specifically has asked for the data I researched regarding the amount of fines that Magistrates have discounted from tickets and citations. Ms. Tajima has replied to Ms. Gangwer that 'the court does not and cannot produce this information' and that the court does not have the 'resource or ability to report on that information'. Ms. Tajima knew this was not true, for I had already researched the issue and provided her and Mr. Parcher with the information that Ms. Gangwer requested. In discussing our work with Ms. Gangwer, Gayle specifically instructed me on multiple occasions to not discuss the magistrate fine reduction with Ms. Gangwer.

I was concerned that this approach may violate the law, as well as the ethical standards of the court. I questioned the consequences of their approach to withhold information from the Department of Finance, stating that it would be better to release the information to them and deal with the budget implications now than to wait and have them find out later and have to explain why the court did not divulge the information when it was requested. Their unilateral response has been that the court does not have an obligation to share that type of information with the Department of Finance. Despite their directive to get rid of my hard copies and minimize any potential public record regarding these reports, I have kept the hard copies and also have saved each draft of my work electronically.

I am aware of RCW 42.41.030 which says that as an employee of a local government, I have the right to report to the appropriate person, information con-

cerning an alleged improper governmental action. Two members of the court's Executive Leadership Team instructed me to alter the public record and withhold information from the City's legislative department by virtue of the Department of Finance. Since I produced four reports on the magistrate fine reductions in late 2003 and early 2004, and identified errors in court generated revenue reports, Mr. Parcher and Ms. Tajima have treated me with increasing hostility. I have not received performance evaluations and raises consistent with my employment agreement with the court.

Even before my knowledge of this investigation, other members of management have warned me that Mr. Parcher is out to get my job. I believe that this so-called 'investigation' is motivated by his desire to remove me from my job in retaliation for my reporting of a potentially illegal and unethical cover-up. It is my understanding that Mr. Parcher reports to your honor (the presiding judge). In making this report to you, I have likely taken the next step upstream in reporting information concerning an alleged improper governmental action. Based on Mr. Parcher's reaction and threats and warnings from co-employees, I have feared that reporting information regarding court revenue and discounts by Magistrates to Ms. Gangwer or others in the City Financial Department would result in my immediate dismissal. With a wife and two small children (ages 6 months and 5 years). I feel I have been intimidated into silence.

Mitigating Issues

Attached, please find copies of my only two performance reviews. Both are excellent. Until the conflict with my supervisor, and later Mr. Parcher, over

concealing information and destroying public documents, I have had an excellent record as an exemplary employee. My research and work reflects diligence and high standards, as also reflected in my evaluations. I have been warned by co-employees that 'Parcher is out to get you'. The investigation regarding my citations was biased and contains inaccuracies. At every possible point, the investigator sought to put me in an unfavorable light, drawing conclusions that are not supported by the record and documents. When I offered to present copies of receipts, etc. Mr. Parcher refused the opportunity. I am a young father with three others to support. I have valued my job. I come to work with a positive attitude and work hard. My record reflects this. To take away my family's sole source of support would crush us. I paid my tickets and the penalties of which I was aware. Contrary to the picture Mr. Parcher tries to paint, I did not seek special treatment. I do not believe I received special treatment different than a member of the public in similar circumstances would receive.

I can learn from this situation. In hindsight, perhaps it would have been wiser to simply mention to my supervisor that I had made arrangements at the court window to pay some parking citations over time. My job is valuable to me. My attitude and performance have reflected this. Even the dispute with management over whether their directives to conceal information and destroy evidence was motivated by a desire to act in an ethical way. I respectfully request that the court allow me to keep the career and position I have worked so long to develop.

Respectfully Submitted,
Bruce Eklund

On July 29, 2004, Bonner sent this memorandum to Bruce Eklund:

TO:                   Bruce Eklund, Strategic Advisor I

FROM:             Fred Bonner, Presiding Judge

DATE:             July 29, 2004

SUBJECT:        Disciplinary Action

The Court recently completed an investigation concerning serious misconduct with regard to how your monetary obligations owed to the court were handled. You were advised of these findings in a July 7, 2004 memorandum. On July 19, 2004, you were provided an opportunity to respond to the disciplinary action proposed in that memorandum.

The investigation fact-findings determined that you involved yourself in a plan to continue your monetary obligations and avoid penalties and that you benefitted financially from improper adjustments to your court record. On multiple occasions, your co-worker, and friend, revised your court record and interfered with the routine defaulting and collections referral of your citations. Specifically, your MCIS obligation due dates were extended twelve times on six citations, four of your citations were recalled from collections and eight default penalties totaling $190.00 were removed. In all, your colleague took improper action on ten citations belonging to you.

Your behavior constitutes serious misconduct. You violated the SMC Code of Conduct, City of Seattle Code of Ethics, SMC Failure to Appear of Failure to Pay Policy, SMC Violations of Seattle Municipal

Court Policy, SMC Information Access Policy, and SMC Workplace Expectations for Employees.

In response to these allegations, you submitted a memorandum to the court dated July 12, 2004 and you provided verbal and written statements at your July 19, 2004 pre-disciplinary hearing. In your statements you dispute the allegations and contend you are innocent of wrongdoing. Your position is that you appropriately sought payment assistance from Court Compliance, that you requested and believed you were on a time payment plan and that you were unaware that your citations were recalled from collections and that your default penalties were removed. You challenged the finding that your default penalties had been removed and shared your belief that you paid some, and possibly all, your default penalties. Yet, in one of the fact-finding interviews, you acknowledged that the amount you ultimately paid for your citations was less than you had anticipated. You also contend in your statements that the investigation regarding these matters was flawed and that information contained in the findings is inaccurate.

After carefully reviewing all the facts of this case, including your July 12, 2004 written statement and the testimony and written statement provided at your pre-disciplinary hearing, I am choosing disciplinary action commensurate with the severity of the misconduct. Therefore, your employment with The Municipal Court of Seattle is terminated immediately.

You will be paid for your accumulated vacation hours. Information will be sent to you concerning COBRA, a program through which you may purchase medical benefits for yourself and eligible fam-

ily members. You should contact the Retirement Office at 386-1292 concerning your retirement funds.

cc:  Yolande E. Williams, Court Administrator
     Gayle Tajima, Director of Finance & Administrative Services
     Janice Flaagan, Senior Personnel Specialist.

On July 29, 2004, Bonner also wrote Bruce Eklund as follows:

TO:              Bruce Eklund, Strategic Advisor I

FROM:            Fred Bonner, Presiding Judge

DATE:            July 29, 2004

SUBJECT:         Response to Allegations

On July 12, 2004 you submitted a written statement raising allegations that the Court retaliated against you for work you performed on magistrate fines. You claimed that after you shared preliminary data with two Court directors, they instructed you to destroy your work, alter a public record and treated you with hostility. Your July 12th submittal claimed that you reported a "potentially illegal and unethical cover-up," and that a subsequent disciplinary investigation and proposed discipline was motivated by the directors' desire to remove you from your job as retaliation for your presentation data.

Your letter of July 12, 2004 is the first reporting of any misconduct or wrong doing the Court is aware of. Since this report follows the Court's notice to you of pending discipline, the sequence of events is not supportive of your claim of retaliation. The statute

you refer to in your July 12, 2004 letter is super-ceded by the City's own codified provisions for whistleblowing activity at SMC 4.20.810. The Municipal Code provides protection for reported acts of misconduct and for cooperating or testifying in proceedings related to the improper governmental action alleged. Your report to the Court, after knowl-edge of pending termination, does not entitle you to whistleblower protection. The Code does not provide the same protections for subjective fears of City employees, related to unreported wrongdoing.

This project was assigned to you at my request and the results of your work were reported to me. Your results were shared with the magistrates, and I requested that this work be continued over the next few quarters to determine if practices changed over time. I find it concerning that you would remove work product of this nature and then present the Court with a thinly veiled threat of discourse after being notified of pending termination. Please return all work materials which you have removed form the Court no later than August 9, 2004. In conclusion, I have not found any improper action on the part of the two directors you identified in your July 12, 2004 letter. The investigation into your mishandling of court obligations is a separate and unrelated investi-gation that arose out of an audit of all Court employ-ees. The result of that audit is that court employees found to have misused their access to Court records were notified of the findings, and appropriate action was taken.

cc:  Yolande E. Williams, Court Administrator
     Gayle Tajima, Director of Finance & Adminis-
     trative Services
     Janice Flaagan, Senior Personnel Specialist.

Eklund was one of five employees of the Municipal Court terminated for misconduct in the handling of parking tickets. In an effort to avoid litigation, each was offered a settlement under which each would agree to resign and file for unemployment benefits. Eklund declined to settle.

On July 29, 2004, Eklund sent by certified mail a letter to the Seattle Ethics and Elections Committee setting out his charges of misconduct by Municipal Court employees.

On August 16, 2004, Eklund met with Wayne Barnett, the executive director of this commission. Barnett, a distinguished lawyer, advised Eklund that he should direct his retaliation claim to the Office of the Mayor.

On August 26, 2004, Eklund filed a complaint with the Office of the Mayor of Seattle charging that the Municipal Court had retaliated against him as a result of his allegations of improper activity. The Office of the Mayor investigated and found that the Municipal Court's investigation of misconduct as to parking tickets had ended in June 2004, with the conclusion that the five employees including Eklund should be fired. The investigation concluded that Eklund had been properly terminated and that he had not shown any retaliatory action by the Municipal Court.

On January 6, 2005, Barnett informed Eklund that "After an extensive and thorough vetting of the issues raised" by Eklund's letter Barnett found no issues appropriate for action by the Ethics and Elections Commission. Barnett advised Eklund that he could appeal Barnett's decision to the full commission.

Eklund made no appeal of either the decision by the Mayor's Office or by the Ethics Commission. It is not clear from what is presented to us whether there were any possible posttermination proceedings he could or should have invoked.

The only issues presented to us involve the actions of Judge Bonner and the pretermination hearing.

Several Seattle newspapers carried stories that five employees of the Municipal Court had been fired for ticket-fixing. The stories did not identify the employees and noted that the court would not release their names.

Eklund experienced difficulties in finding employment after his termination. His income was substantially reduced. He believed that his termination was the cause of his difficulties.

## PROCEEDINGS

On February 15, 2007, Eklund filed his second amended complaint against Bonner and the other defendants. Under "Legal Claims" the complaint asserted:

> Eklund may recover based on several legal claims including breach of contract of employment; wrongful discharge; discharge in violation of public policy (policies in favor of public disclosure, agency accountability, whistle blowing, revealing violations of law, requiring compliance with state statutes, judicial independence and otherwise); whistle blower laws; violation of and conspiracy to violate the Washington State Public Disclosure Act (PDA) including but not limited to refusing to comply with requests for information made by City officials and in substance adopted by Eklund, and anticipatory violations of the PDA; negligence; defamation, including relating to statements made to the media and statements made to the public in Eklund's personnel file which defendants knew was subject to disclosure and could be and would be released to the public; invasion of privacy and false light; violation of state and/or federal constitutional rights to free

speech, political participation and/or to public employment and/or requiring proper termination thereof including termination and publication of statements in a personnel file available to the public only with a proper and prior name clearing or "Loudermill" hearing.

On June 10, 2008, Bonner moved for summary judgment on the ground of qualified immunity. The district court denied the motion on September 12, stating that there were disputed issues of material fact.

Also in the pretrial proceedings the district court reduced Eklund's "Legal Claims" to two questions to be put to the jury: Was Eklund wrongfully terminated by the defendants? Were his rights to due process violated by the defendants?

The jury answered the first question, No, and the second question, Yes. It awarded Eklund economic damages of $210,000, non-economic damages of $100,000, and punitive damages of $156,000 against Bonner.

On motion of the defendants, the district court eliminated the economic damages. Bonner renewed an earlier motion for qualified immunity. The district court denied the motion. The court stated that "there was no evidence that Bonner had any personal animosity toward Eklund" but that "there was sufficient evidence for the jury to find that Bonner was biased against Eklund as a result of Eklund's accusations against the SMC. . . . It is not the Court's role to substitute its view of the evidence for the jury's view."

Bonner appeals the judgment against him. Eklund appeals the elimination of the economic damages.

## ANALYSIS

*The standard of review.* The question of qualified immunity, which in this case is dispositive, is a legal question,

reviewed by us de novo. *Mueller v. Auker*, 576 F.3d 979, 991 (9th Cir. 2009).

**[1]** *Qualified Immunity*. Bonner is entitled to qualified immunity if his " 'conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *See James v. Rowlands*, 606 F.3d 646, 650 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Under *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), courts have discretion to grant qualified immunity if the right at issue was not clearly established at the time, without deciding whether there was a constitutional violation. "A right is clearly established if the 'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *James*, 606 F.3d at 652 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Thus, Bonner is entitled to qualified immunity unless a reasonable person in his position would have believed that he should have recused himself from presiding at the July 19, 2004 pretermination name-clearing hearing.[1] We conclude that a reasonable person in Bonner's position would not have believed that he was constitutionally required to recuse himself.

**[2]** In his fax of July 12, 2004 to Bonner, Eklund's counsel told Bonner that he had a disqualifying conflict of interest: he had investigated the charges against Eklund, and found them true, now he was adjudicating them. This assertion of Bonner's disqualification was a misstatement of established law. The Supreme Court has made abundantly evident that an investigator's investigation and conclusion as to misconduct does not disqualify the investigator as a judge of the misconduct. *Withrow v. Larkin*, 421 U.S. 35, 47-50 (1975) ("The

---

[1]Because Eklund was an at-will employee, he was entitled only to a name-clearing hearing, not to a pretermination hearing concerning the discharge itself. *See Board of Regents of State Colleges v. Rothe*, 408 U.S. 564, 573 & n.12 (1972).

contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry.") The bare suggestion that the two roles conflicted carried no weight. Eklund's counsel suggested nothing else.

Eklund's own fax on the same date did not convey any request that Bonner disqualify himself. The fax did refer to misconduct in the Municipal Court. The letter did not charge Bonner with responsibility for this misconduct. Rather, the thrust of the letter was to alert Bonner to Eklund's charges so that Bonner could take these charges into account. Neither explicitly nor implicitly did Eklund request Bonner to disqualify himself from the hearing.

[3] When Eklund's counsel sought his disqualification on patently insufficient grounds, Bonner had no duty to recuse himself. Bonner was no more required to recuse by Eklund's charges bearing on members of the court staff which Eklund presented as part of his response to the charges against himself. Nothing in Eklund's fax asserted that he considered Bonner responsible for the misconduct or that he therefore saw Bonner as incapacitated by a conflict of interest.

[4] If counsel seeks recusal of a judge for conflict of interest and presents patently insufficient reason and the litigant himself expresses no dissatisfaction with the judge, a reasonable judge still has an obligation of self-examination to be certain that he harbors no partiality toward or against a party. A judge must ask, Do I have a pecuniary interest in the matter? Do I have a personal interest? *See Withrow*, 421 U.S. at 47.

[5] Patently, Judge Bonner had no pecuniary interest. Whatever effect Eklund's disclosure might have had on the Municipal Court budget, Eklund made no allegation and offered no proof that Bonner himself stood to benefit finan-

cially from any particular outcome. Nor did he have a personal interest. He has not been shown to have held any personal grudge against Eklund or to have had any particular bias in favor of the accused employees.

**[6]** What is probable that Bonner did have was a regard for the reputation of the institution of which he was the chief judge and administrator. Any judge will have some feeling for the reputation of his court and resent slander upon it. The chief is likely to be a little more sensitive. After all, people will speak of it as "his court." Nonetheless, this kind of popular association does not create an identity between a court and its chief judge. A tough-minded judge, indeed any rational judge, will distinguish between himself and the institutional system and its various parts and members. Absent extreme bias, a chief administrator is not disqualified from giving a hearing to an employee who has made charges against the employees of the institution but not against the chief personally. A chief judge in Bonner's position could reasonably have believed that Bonner was not disabled by bias. He was therefore entitled in September 2006 to qualified immunity and dismissal of Eklund's case against him.

In error, the case went to trial. Counsel for Eklund examining Bonner as a witness focused on the July 29 letter Bonner had signed. The letter stated concern over Eklund's "veiled threat of discourse after being notified of pending termination." Bonner made plain that he had not written it but he took responsibility for it. He agreed that "discourse" was probably a typo for "disclosure." He explained that what was meant was disclosure of Eklund's charges outside the Municipal Court. Bonner observed that the letter had been drafted years ago and he was "thinking about something else entirely," but that he did regard Eklund's work as "internal only." Bonner further testified that he did not consider Eklund's threat to disclose when he decided to fire him. Eklund's counsel then asked if Bonner knew that Eklund was accusing him of breaking the law if he fired Eklund on account of Eklund's accusa-

tions. "That's not my understanding," Bonner replied. Counsel now phrased Eklund's July 29 letter as accusations against "you [Bonner] and your staff" and asked Bonner if he did not know that Eklund was accusing him of breaking the law. Bonner answered that he had had no conversation with Eklund. Counsel then asked if Bonner did not consider that Eklund's accusations created a conflict of interest for Bonner, disqualifying him to hear Eklund's case. Bonner replied, "No, I did not."

[7] This examination of Bonner established that Bonner did not want Eklund's accusations to be disclosed outside the Municipal Court. Despite the phrasing of Eklund's counsel, Eklund's accusations were not against Bonner personally. The accusations implicated the institution and specific staff members. As the investigations by the Mayor's Office and the Ethics Commission established, Eklund's accusations did not lead to any legal consequences for anyone in the Municipal Court. What Bonner expressed concern about was not criminal prosecution of himself but bad publicity for his court. His feelings were institutional, not personal. He was not disqualified as a decisionmaker at Eklund's hearing. His renewed motions for qualified immunity should have been granted.

Eklund's appeal on the issue of economic damages is necessarily foreclosed by this opinion.

For the reasons stated, the judgment of the district court is REVERSED and the case is REMANDED for entry of judgment in favor of Bonner.

---

CANBY, Circuit Judge:

I agree with the analysis set forth in Judge Noonan's opinion, and I concur in the judgment.